JOSÉ E. BERROCAL, Petitioner, *v.* REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 1041. Argued March 6, 1939.—Decided March 21, 1939.

502

*José Sabater* for petitioner; the respondent Registrar appeared by brief.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Evaristo Asencio borrowed $610 from José E. Berrocal. The borrower, with the express consent of his wife, Trinidad Casiano, executed a mortgage in favor of the lender, on a house and lot, to insure payment of the principal, interest thereon at the rate of 9 per cent *per annum* and of an additional sum of $100 for costs expenses and attorney's fees in case of judicial proceedings to recover the debt. One of the stipulations of the contract reads as follows:

"The mortgage executed herein shall extend to any new construction erected upon the mortgaged property, *even by third persons.*"

The deed was presented at the Registry of Property of Mayagüez and the Registrar made the following notation at the foot of the document:

"It is made known that the recording is denied insofar as the clause regarding extension of the mortgage to new constructions made on the property by third persons, for the reason that the mortgagor cannot mortgage, new constructions built in the future by a third person on the mortgaged property."

The mortgagor filed this administrative appeal moving that the note be reversed.

The issue is whether the clause cited is valid. In other words, whether the parties may agree that any new construction erected upon the mortgaged property shall be subject to the mortgage. even though it belongs to someone other than the debtors.

It has always been a fundamental principle of the Spanish Mortgage Law that no ne can mortgage that which is not his, that is, that the mortgagor must own the thing encumbered.

Law VII, 13th Title, Part. 5th, enunciated this principle as follows:

"Those who have the right to sell things because they own them, can pawn them to others."

Later the Spanish Civil Code expressed the same rule in section 1857 which became 1756 of ours (1930 ed.) as follows:

"Section 1756.—The following are *essential requisites* of the contracts of pledge and mortgage:

"1.   .      .      .      .      .      .      .

"2. *That the thing pledged or mortgaged is owned by the person who pledges or mortgages it.*

"3.   .      .      .      .      .      .

"Third persons, strangers to the principal obligation, may secure the latter by pledging or mortgaging *their own property.*" (Italics supplied.)

The Mortgage Law expresses the same rule in Sections 138 and 139, to wit:

"Sec. 138. Voluntary mortgages are those which may be agreed on between the parties voluntarily or imposed *by the owner of the property on which constituted.*

"Sec. 139. Voluntary mortgages may be constitude only by persons who have the free disposition of their property, or, if not so qualified, if authorized therefor by the law."

Manresa in his commentaries upon section 1857 of the Spanish Civil Code, which is 1756 of ours, says:

"The pledge and the mortgage ordinarily are security for an obligation in *rem* or for a principal obligation whose fulfillment is guaranteed in one way or another; and therefor, it is essential to them that if.the main secured obligation is not performed, proceedings may be taken against the security, and the product therefrom applied in settlement of the principal obligation. This could not be so if the property pledged or mortgaged did not belong to the pledgor or mortgagor. That is, if the things pledged or mortgaged, guarantee the fulfillment of the principal obligation, and they have to be sold or transmitted to the creditor, as the case may be, if said obligation is not performed, it is evident that the second require-

ment is necessary, because there exists a real conveyance of owner-ship or of the rights over the property given as security by the one who creates those liens when he gives in pledge or mortgages the property.

"This does not mean that the original debtor is always the mortgagor or pledgor; because it is not essential, nor is it customary. On the contrary, very frequently a third party guarantees obligations with his property.

"In these contracts whose common elements we are discussing, surety may be given by the original debtor, but this is not indispensable as a third party may do it for him and this third party as well as the principal debtor respectively must be the owners of the thing pledged or mortgaged as shown above.

"That is why the Code, in the last paragraph of the same section, vanishes all doubts saying that third persons not parties to the main agreement (that is, the contract where that is set forth) may secure the obligation by pledging or mortgaging *their own properties*, which merely follows the existing law prior to its enactment.

"In fact, the seventh law, title 13 of the Fifth Partida, ordered, so far as the pledge is concerned, that *those who* have not *the right to sell goods* could not pawn them, for the expressed reason that both pledge and mortgage include an actual conveyance of the thing given in guarantee, in either case, because it runs the risks that the main obligation may remain unfulfilled. And as to the mortgage, the Mortgage Law had already said that it could not be executed on any real property by he who did not prove his ownership over it; and it could not be recorded unless the right of the mortgagor over the property was previously recorded in the Registry of Property." 12 Manresa, Comentarios al Código Civil (1911 ed.), p. 383.

Galindo and Escosura in their Commentaries to sections 138 to 141 of the Spanish Mortgage Law, which bear the same numbers as in our code, emphasize the requisite that the mortgagor should be the owner of the thing encumbered, and say as follows:

"This is not, however, the aim of the law; from a perusal of its various dispositions it is inferred that it requires, to a certain degree inconveniently, that ownership of the thing or right mortgaged should be vested in the mortgagor; even if this ownership is contingent and revocable, as long as it exists.

"Section 139 presumes although not directly, ownership in the mortgagor, when it provides that only those who have the right to freely transfer their properties, or not having said right are authorized by law to dispose of them, can execute voluntary mortgages. Nor does this Section provide that those who have the right to freely dispose of their properties can execute mortgages *over them;* and if it is an axiom that the Mortgage Law does not vary the general principals of law unless expressly decreed, as according to the latter those who have the power to dispose their own properties may mortgage those of others; as their agents it could be held that the condition imposed by section 139 refers to the person, and is related to the capacity of a party to enter into contracts; and does not refer to the ownership of the things which are the object of the contract, that is to say, whether owned by the mortgagor or by a third party.

"It is section 141 which makes the rule more definite, because if only those who have the right to freely alienate their property may execute mortgages (section 139) and if they can do so by agents (section 140) and if the agent acts beyond the scope of his authority, the owner may ratify the acts of the agent (section 141), it is clearly inferred that the agency must be created by the owner, and that it is the latter only who may execute a mortgage, directly or through his agent.'' 4 Galindo and Escosura, Comentarios a la Legislación Hipotecaria, 247.

Construction of a building upon a lot belonging to somebody else may present three different situations:

1. It may be built by authority of or by virtue of a contract with the owner of the land.
2. It may have been built acting in good faith.
3. It may have been built acting in bad faith.

In the first case, the builder retains ownership of the construction against the owner of the lot, and he can record his building in the Registry of Property; in the second, the owner of the land does not acquire the building (section 297, Civil Code) until he pays the indemnity specified in sections 382 and 383 of the same law; in the third case, although he who builds in bad faith upon another's land loses what he has built according to section 298 of the Civil Code, yet he.

can choose to destroy the building and pay the damages, if it can be done without impairment of the property; and in that case the owner of the land does not acquire title to the building either. 3 Manresa, Código Civil Español, 1910, ed., p. 216.

On what grounds can the landowner execute a voluntary mortgage upon a building he has not erected? It could be argued that in any of the three cases mentioned there is always a possibility more or less likely that the owner of the land may in some way acquire the building, and that foreseeing this the clause in controversy should be upheld. But this we would answer with the following paragraph from Galindo and Escosura: •

"Inferences and presumptions, which are more or less remote, more or less likely, more or less subject to construction, have no place in this Law, which bases its system upon the principles of specialty and publicity." 4 Galindo y Escosura, pp. 75–76.

It could also be argued that he who built could have known, from the registry, that the building was subject to the mortgage; but as it is presumed that everyone knows the law, the builder should know that such a condition was not binding upon him, because as he was the only owner of the building, only he could mortgage it, notwithstanding any agreements entered into by the owner of the land and a third person without the consent of the owner of the building. Sections 1756 of the Civil Code and 138 and 139 of the Mortgage Law.

No matter how advantageous the clause in question may be to the mortgagee, it is contrary to law, and therefore the parties cannot agree to it it being, therefore, null and void, according to section 1207 of the Civil Code, which provides:

"The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, *provided they . are not in contravention of law,* morals, or public order." (Italics supplied.)

The clause in question is evidently contrary to law. It is null and void, and therefore, the refusal of the Registrar to record it was correct.

For the preceding reasons the note appealed from must be affirmed.